UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ADRIAN FRANCIS WILLIAMS,

                    Petitioner,

vs.                                    Case No. 3:12-cv-1296-J-39MCR

SECRETARY, DOC, et al.,

                    Respondents.

_____

## **ORDER**

### **I.  STATUS**

Petitioner Adrian Francis Williams challenges a 2009 (Duval County) conviction for burglary of a dwelling.  He is proceeding on an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Amended Petition) (Doc. 8).  He raises five grounds in the Amended Petition: (1) a Sixth Amendment claim of ineffective assistance of counsel for failure to file a motion in limine to exclude all testimony concerning an object (jar/bowl) not placed in evidence, along with a Sixth Amendment Confrontation Clause and Fourteenth Amendment Due Process Clause claims; (2) a Sixth Amendment claim of ineffective assistance of counsel for failure to request a Richardson[1] hearing, along with a Fourteenth Amendment claim of denial of due process of

_____

[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).

law; (3) a Sixth Amendment claim of ineffective assistance of counsel for making an improper comment during opening statement and depriving Petitioner of a fair trial in violation of the Due Process Clause of the Fourteenth Amendment; (4) a Sixth Amendment claim of ineffective assistance of counsel asserting counsel advised Petitioner not to testify because counsel would raise the issue of denial of access to the object (jar/bowl), which he did, but counsel failed to object in order to preserve the matter for appeal, depriving Petitioner of a fair trial in violation of the Fourteenth Amendment; and (5) a violation of speedy trial rules pursuant to the Florida Rules of Criminal Procedure, as well as a denial of the right to fair and speedy trial and denial of effective assistance of counsel under the Sixth Amendment.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 23) conceding the Amended Petition is timely, but asserting the Amended Petition should not be granted. They also submitted Exhibits to Answer to Petition for Writ of Habeas Corpus.[2]  Id.  In response, Petitioner filed a Reply Brief (Reply) (Doc. 25) and Exhibits (Doc. 26).  See Order (Doc. 10). The Court will address Petitioner's claims, Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), Dupree v. Warden, 715 F.3d 1295,

---

[2] The Court hereinafter refers to the exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page.  Otherwise, the page number on the particular document will be referenced.

1298 (11th Cir. 2013).  Upon review, no evidentiary proceedings are

required in this Court.

## II.   STANDARD OF REVIEW

As very recently noted by the Eleventh Circuit,

> review of the state habeas court's decision is
> constrained by § 2254(d) of the Antiterrorism
> and Effective Death Penalty Act of 1996
> ("AEDPA"),[3] which "imposes a highly
> deferential standard for evaluating state
> court rulings and demands that state-court
> decisions be given the benefit of the doubt."
> Bishop v. Warden, GDCP, 726 F.3d 1243, 1253
> (11th Cir. 2013), cert. denied, --- U.S. ----,
> 135 S.Ct. 67 (2014) (internal quotation
> omitted). Pursuant to the AEDPA, this Court is
> prohibited from granting relief if a state
> court has adjudicated a claim on the merits
> unless the state court's decision "was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U .S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceedings," id. §
> 2254(d)(2). This Court will analyze
> Petitioner's claims pursuant to 28 U.S.C. §
> 2254(d), as amended by the Antiterrorism and
> Effective Death Penalty Act (AEDPA).

French v. Warden, Wilcox State Prison, No. 12-15385, 2015 WL

3857639, at * 3 (11th Cir. June 23, 2015).  See Harrington v.

Richter, 562 U.S. 86, 98 (2011) (setting forth the same three

exceptions to the bar to relitigation of any claim adjudicated on

the merits in state court).

---

[3] The Court will hereinafter refer to the Antiterrorism and
Effective Death Penalty Act as "AEDPA."

This Court will give a presumption of correctness of the state courts' factual findings unless rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Also, the Court will apply this presumption to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

In the Amended Petition before the Court, Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

## IV.   PROCEDURAL HISTORY

Briefly, the Court will provide historical context to Petitioner's grounds for relief.  On November 16, 2007, Petitioner was charged by information with two counts of burglary.  Ex. 3A. Petitioner's counsel, an assistant public defender, moved for severance.  Ex. 3B.  He also moved for a continuance, stating that depositions were originally set for March 4, 2008, but counsel for

both the defense and the state had a conflict due to another trial being set for that date, and depositions were reset for April 1 and April 2, 2008. Ex. 5A at 20-21. The court granted the motion for continuance. Id. at 19. Numerous notices of taking deposition were served. Ex. 5B. On July 24, 2008, the state moved for continuance based on the fact that the victim had a family emergency. Ex. 5C. The court granted the motion. Id.

On October 2, 2008, Petitioner filed a pro se pleading in the Supreme Court of Florida complaining of a violation of his right to a speedy trial. Ex. 6A. The court treated the letter as a petition for writ of habeas corpus and transferred the matter to the First District Court of Appeal. Ex. 6B. The First District Court of Appeal ordered Petitioner to show cause why the petition should not be dismissed as unauthorized, as apparently Petitioner was represented by counsel. Ex. 6C. Petitioner responded. Id. On December 17, 2008, the court dismissed the petition as unauthorized. Ex. 6D.

Meanwhile, on November 19, 2008, the public defender withdrew, and attorney Scott Leemis entered an appearance as retained counsel for Petitioner. Ex. 7 at 131. Thereafter, jury selection began on February 2, 2009. Ex. 8. The court announced that the trial would proceed on count two. Id. at 17. The court advised Petitioner that if convicted and found to be a habitual felony offender, he would be facing a prison sentence of thirty years. Id. at 18.

Petitioner told the Court he was concerned about the violation of his speedy trial and constitutional rights. <u>Id</u>. The court responded that that would be resolved by trying his case. <u>Id</u>. Counsel interjected that prior to his taking over the case, Petitioner had some complaints about what he perceived to be a violation of his speedy trial rights. <u>Id</u>. at 21-22. Counsel explained:

> That has been ruled on by Judge Carithers. It was brought up before Judge Cooper. I think the law of the case has already been ruled on, and as Your Honor says, he's at this point getting his trial, and I've informed him that if there was, in fact, some violation that that may need to be taken care of after the fact if, in fact, there was a conviction.

<u>Id</u>. at 22.

When Petitioner continued to complain, the prosecutor provided a brief history of the proceedings:

> Your Honor, the history, to answer that, the case has been around since 2007, and the issue was raised before two prior courts. As counsel knows, Judge Carithers and Judge Cooper, in essence, Your Honor, counsel, previous counsel before Mr. Leemis moved for a continuance, in effect waiving his speedy trial.

<u>Id</u>. at 23. Petitioner further inquired about the waiver by counsel, and the court said: "I think that the lawyer can and probably has an obligation to do that in certain circumstances[.]" <u>Id</u>. at 24.

On February 5, 2009, a jury trial was conducted. Ex. 9. At the outset, the state conceded the merit of a motion in limine

- 6 -

filed by the defense.  <u>Id</u>. at 230-31.  Petitioner complained that he did not get depositions in his case.  <u>Id</u>. at 236.  Defense counsel explained that, in terms of trial strategy for a fingerprint case, he had made a decision as to the best approach to take under the circumstances.  <u>Id</u>. at 236-37.  Petitioner again complained about the denial of speedy trial, and defense counsel informed the court that the matter had been addressed by previous judges in the case.  <u>Id</u>. at 239.

On February 5, 2009, the jury returned a verdict of guilty as to the charge of burglary of a dwelling.  <u>Id</u>. at 387; Ex. 11.  The trial court adjudicated Petitioner guilty and sentenced him to thirty years as a habitual felony offender.  Ex. 13 at 162; Ex. 14.  Petitioner appealed.  Ex. 15; Ex. 16; Ex. 17.  On May 25, 2010, the First District Court of Appeal affirmed per curiam.  Ex. 18.  The mandate issued on June 10, 2010.  <u>Id</u>.  The state nolle prossed count one.  Ex. 19.

Petitioner filed a Rule 3.850 Motion for Post-Conviction Relief.  Ex. 20A.  He filed multiple supplements and/or amendments.  Ex. 20B; Ex. 20C; Ex. 20D; Ex. 20E; Ex. 20F; 20G; 20H; 20I; Ex. 20J; Ex. 20K; Ex. 20L; Ex. 20M.  On June 28, 2012, the trial court entered an Order Denying Defendant's Motion for Postconviction Relief.  Ex. 21.  Petitioner appealed.  Ex. 22; Ex. 23.  The state filed a notice that it would not file an answer brief.  Ex. 24.  The First District Court of Appeal, on September 24, 2012, per curiam affirmed the circuit court's decision.  Ex. 25.  The mandate

issued on October 22, 2012.  Id.  Petitioner filed a petition for discretionary review, and the Supreme Court of Florida dismissed the petition.  Ex. 26A; Ex. 26B. Petitioner appealed, and the Florida Supreme Court dismissed the appeal.  Ex. 27A; Ex. 27B.

Petitioner filed a petition for writ of habeas corpus in the First District Court of Appeal.  Ex. 28.  The First District Court of Appeal denied the petition.  Ex. 29.  Petitioner sought rehearing, and the court denied rehearing.  Ex. 30; Ex. 31.

Petitioner filed a petition seeking a belated appeal.  Ex. 32. The First District Court of Appeal treated the petition as a petition alleging ineffective assistance of appellate counsel, and on January 29, 2013, the court dismissed the petition.  Ex. 33; Ex. 34.  Petitioner sought rehearing, and the court denied rehearing. Ex. 35.

Petitioner filed a document entitled "Manifest Injustice" in the Supreme Court of Florida (Doc. 27-1).  Ex. 36.  The court treated it as a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel.  Ex. 36.  On January 10, 2014, the Supreme Court of Florida denied the petition.  (Doc. 27-1 at 32).

### V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Grounds One and Two

The first two grounds of the Amended Petition are: (1) a Sixth Amendment claim of ineffective assistance of counsel for failure to filed a motion in limine to exclude all testimony concerning an

object (jar/bowl) not placed in evidence, along with a Sixth
Amendment Confrontation Clause and Fourteenth Amendment Due Process
Clause claims; and (2) a Sixth Amendment claim of ineffective
assistance of counsel for failure to request a <u>Richardson</u> hearing,
along with a Fourteenth Amendment claim of denial of due process of
law.  Petitioner described these grounds as, a "5th and 14th
Amendment violation of due process/6th Amendment violation
Confrontation Clause.  Discovery Violation Trial Counsel failing to
file a motion in limine to exclude all testimony in trial from the
object not in evidence[;]" and a "(5th and 14th Amendment violation
of due process denied extremely) 6th Amendment violation
ineffective trial counsel.  6th Amendment violation right to a fair
trial, chain of custody violation, Brady violation, Youngblood
violation, failure to request a Richardson hearing.  The Petitioner
and counsel being denied access to the alleged object."  Petition
at 5-6.  As noted by the trial court and Respondents, both of these
grounds predominately concern Petitioner's complaint that his
counsel was ineffective for not moving to exclude one item of
evidence:  the broken jar/bowl.  Ex. 21 at 64; Response at 15.

In both of these grounds, Petitioner asserts that he received
the ineffective assistance of counsel in violation of the Sixth
Amendment to the United States Constitution.  In order to prevail
on this Sixth Amendment claim, he must satisfy the two-pronged test
set forth in <u>Strickland</u>, requiring that he show both deficient
performance and prejudice.

In addressing the post conviction motion, the trial court stated that the matter was before the court on the Rule 3.850 motion and eight supplements.  Ex. 21 at 64 n.1.  In reviewing the motion and supplements, the circuit court concluded that "[a]lthough Defendant presents many issues premised on ineffectiveness of counsel, however they all deal with the same two issues: His counsel was ineffective for not moving to exclude one item of evidence and for violating Defendant's right to a speedy trial." Id. at 64.  Of note, before addressing the grounds raised, the trial court set forth the Strickland standard which must be met to prevail on a claim of ineffective assistance of counsel.  Id. at 64-65.

In denying Petitioner's claim of ineffective assistance of counsel, the trial court said:

> Defendant argues that because the cookie jar on which his fingerprint was found was not produced at trial, the evidence of his fingerprint was inadmissible.  According to Defendant, his counsel should have moved to suppress that evidence.  As this was the only evidence used to prove Defendant's presence at the scene, Defendant argues that it was prejudicial for leading the jury to return a guilty verdict.  To prevail, Defendant must prove that the cookie jar was material evidence.  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense . . . (I)f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." State v. Snell, 392 So.2d 299, 301 (Fla. 5th

- 10 -

DCA 1980) (quoting <u>United States v. Augurs</u>, 427 U.S. 97, 109, 112-13 (1976)).

Ex. 21 at 65.

In a succinct fashion, the trial court held:

> The material evidence was the fingerprint, not the cookie jar. The State produced an evidence technician and a latent fingerprint examiner from the Jacksonville Sheriff's Office. Both men provided substantial evidence to lead a jury to believe that the fingerprint found on and lifted from the cookie jar matched Defendant's fingerprint. (Ex. D. at 292, 294, 314, 316-18.) Moreover, the evidence also established an unbroken chain of custody once the fingerprint was lifted from the cookie jar until it was needed for trial. (Ex. D at 295-98, 315.) Finally, Defendant's argument that counsel should have deposed the state's witnesses to explain why the cookie jar was not part of the evidence at trial lacks merit because the cookie jar would not have been beneficial to Defendant, thus there was no prejudice.

Ex. 21 at 65-66 (footnote omitted). The court also noted that although Petitioner made much of the fact that the broken vessel was referred to as a cookie jar by the victim and as a bowl by the police, the court concluded that the different terminology used by the witnesses in referring to the broken item found on the kitchen floor was insignificant and not worthy of further discussion. <u>Id</u>. at 65 n.2.

The trial court denied post conviction relief, <u>id</u>. at 66, and the First District Court of Appeal affirmed. Ex. 25. As such, Petitioner's claims were adjudicated on their merits and the

state's court's adjudication of these grounds is entitled to AEDPA deference.

In pertinent part, the record shows the following.  The victim, Sharlinde Vinson, testified that she discovered a broken vessel on the kitchen floor, which she referred to as a "cookie jar." Ex. 9 at 271.  The state submitted into evidence photographs taken of the kitchen and the pieces of broken jar/bowl located on the floor of the kitchen.  Id. at 270-72.  The victim testified that she purchased the "cookie jar" from Wal-Mart, and when she purchased it, it was in a sealed box.  Id. at 275.  She confirmed that the box was sealed upon purchase.  Id. at 286.  She attested that after the evidence technician lifted the prints from the jar, he left it.  Id.  She proceeded to clean up the mess made when her house was ransacked.  Id.

The evidence technician, Leonard Ray Mossman, testified that there was a "bowl" on the kitchen floor.  Id. at 291.  He further stated that he dusted the broken pieces of bowl for prints.  Id. at 293-94.  He lifted and collected a print from the broken bowl, placing it on a fingerprint card.  Id. at 294.  He identified the fingerprint card in court, which the state then moved into evidence.  Id. at 295-96.  In response to cross examination about why he did not take the piece of broken bowl into custody, he said: "[w]e just don't do that.  It was an item that was there, I dusted it, I obtained what we thought was a lift.  There was no reason to take it, I don't take it."  Id. at 302-303.  The record further

- 12 -

shows that the latent fingerprint examiner, Thomas E. Howell, testified that Petitioner made the latent print. Id. at 318.

Defense counsel moved for a judgment of acquittal, noting that the state's entire case hinged on the "one fingerprint identification[.]" Id. at 321. He described the piece of bowl as chattel property, readily movable from place to place, which could have been touched prior to being placed in the victim's home. Id. at 323. After argument, the trial court denied the motion. Id. at 324.

Petitioner claims his trial counsel was ineffective for failure to file a motion in limine to exclude all testimony concerning the broken piece of jar/bowl because the item was not collected as evidence. This claim simply has no merit. The lifted print placed on the fingerprint card was the crucial piece of evidence in this case, not the broken piece of jar/bowl. The record shows that the state fully disclosed all information and evidence concerning the lifted print to Petitioner. Ex. 4 at 11-12, 17-18, 25-26, 31. Thus, there was no discovery violation.[4]

Not only was there no discovery violation, there was no violation of Brady v. Maryland, 373 U.S. 83 (1963). "To establish a Brady violation, [Petitioner] had to prove that the prosecution withheld favorable evidence and that he was prejudiced as a result." United States v. Brester, No. 13-15311, 2015 WL 2393697,

_____

[4] Of import, the issue at trial was the timing of the placement of the fingerprint on the item.

- 13 -

at *3 (11th Cir. May 20, 2015) (citing <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)).   In order to establish prejudice, Petitioner would also have to prove "that there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"   <u>Id</u>. (citing <u>United State v. Bagley</u>, 473 U.S. 667, 682 (1985)).   This does not mean that prejudice is established when the admission of the item might have helped or might have affected the outcome of trial; instead, it must be a "probability sufficient to undermine confidence in the outcome."   <u>Id</u>. (citation omitted).

Of course, in this instance, there was nothing exculpatory or impeaching about the broken piece of jar/bowl.   The police gathered the significant evidence and the state submitted it at trial: the lifted latent fingerprint.   Upon review, there was no discovery violation; the state did not withhold favorable evidence; and Petitioner was not prejudiced.   Moreover, Petitioner failed to establish a reasonable probability that the outcome of his trial would have been different if counsel had performed as Petitioner now claims he should have at pre-trial and trial.

There was no discovery violation; therefore, a request for a <u>Richardson</u> [246 So.2d at 774] hearing was not appropriate or necessary.   <u>See</u> <u>Barrett v. State</u>, 649 So.2d 219, 222 (Fla. 1994) (per curiam) (noting the requirement of a <u>Richardson</u> hearing only if the court finds a discovery violation).   Petitioner also fails

to adequately support an assertion of a <u>Youngblood</u>[5] violation.  In his Amended Petition, he is claiming that the police failed to collect evidence in the first instance, which is not comparable to an assertion of bad faith in the police's failure to preserve evidence.  <u>Id</u>. at 57-58.  Even if Petitioner were making such an assertion of bad faith, "the results of any tests to which [the jar/bowl] could have been subjected would not have exonerated Petitioner."  Response at 24.  This includes any assertion that it was impossible or unlikely that a lift could have been made since, in actuality, the police successfully lifted a latent print, the state presented the latent print at trial, and the prosecution submitted expert testimony that Petitioner made the latent print.  <u>See id</u>. at 25.

To the extent Petitioner is raising a Confrontation Clause claim, he is not entitled to relief because, under harmless error analysis, Petitioner will not prevail.  In a habeas corpus proceeding analyzing Confrontation Clause transgressions, "harmlessness is to be judged under the <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), standard of 'substantial and injurious effect[.]'" <u>Hodges v. Attorney Gen., State of Fla.</u>, 506 F.3d 1337, 1343 (11th Cir. 2007) (citation omitted), <u>cert</u>. <u>denied</u>, 555 U.S. 855 (2008).

---

[5] <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988).

At trial, the victim testified as to the location of the broken jar/bowl on the kitchen floor. The evidence technician took photographs of the kitchen and the pieces of the broken jar/bowl, and these photographs were presented at trial. The evidence technician testified to lifting the print from the piece of broken jar/bowl and preserving the latent print on a fingerprint card. The latent fingerprint examiner testified concerning the latent print and its match to Petitioner. Upon a thorough review of the record, Petitioner was not prevented from thoroughly cross examining these witnesses. Indeed, the record shows that counsel effectively cross examined the state's witnesses. Ex. 9 at 280-87; 298-303; 318-20.

To the extent Petitioner is claiming that the trial court improperly denied his allegation of denial of due process of law, the Court finds that Petitioner has not established "that the state court's ruling on [his due process] claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Considering the above, Petitioner's trial was not rendered unfair.

Finally, with respect to Petitioner's claim of ineffective assistance of counsel, Petitioner is not entitled to habeas corpus relief. At the end of the trial, the court said: "First of all, let me just tell you that I think that both the attorneys did a really good job, just personally. And I know you don't probably

- 16 -

share this, Mr. Williams, but it's enjoyable for me to see good lawyering, both the lawyers did a good job."  Ex. 9 at 385-86. Upon inquiry, Petitioner responded that his counsel's services were satisfactory.  Id.

Petitioner has failed to advance a persuasive argument that counsel's failure to file a motion in limine to exclude all testimony about the jar/bowl, to request a Richardson hearing, and to generally object to this evidence was unreasonable or that his conduct was outside the wide range of professional representation. In addition, Petitioner has not shown prejudice because he has not established that, if counsel had taken these actions, there is a reasonable probability that the outcome of the proceedings would have been different.  In this case, the Court concludes that there has been no showing of prejudice since Petitioner has failed to establish that the filing of a motion in limine, requesting a Richardson hearing, and otherwise objecting to the evidence would have produced a different result.  In addition, Petitioner failed to establish Brady and Youngblood violations.

With regard to the claim of ineffective assistance of trial counsel, not only did the trial court recognize the appropriate standard upon which to review the claim, upon due consideration, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim and the Confrontation Clause and Due Process Clause claims. Also, the decision to deny these grounds was not contrary to

- 17 -

clearly established federal law and was not based on an unreasonable determination of the facts.   Finally, Petitioner failed to show deficient performance nor resulting prejudice based on the performance of his defense counsel.   Thus, he is not entitled to habeas relief on grounds one and two.

## B.   Ground Three

In his third ground for habeas relief, Petitioner raises the following:   a Sixth Amendment claim of ineffective assistance of counsel for making an improper comment during opening statement and depriving Petitioner of a fair trial in violation of the Due Process Clause of the Fourteenth Amendment.   The attorney made the alleged improper comment during opening statement.   Defense counsel said:

> I think you'll hear about leads that didn't go anywhere, because they weren't followed up on.  You're going to hear, and in your own mind, come up with possibilities of different ways that this crime could have occurred that have nothing to do with Mr. Williams.
>
> And there are ways that his fingerprint could be found on that item, which I think you'll find -- and let's go ahead and put an element of precision in here.  It's a bowl, it's not a cookie jar, let's start with that. This is a game, this is a test of precision. This is an issue where this man's liberty is at stake, and you can't cut corners, and you can't make assumptions, you can't speculate. But you are to use your common sense in looking at all of the evidence, all of the evidence, what little there is, and apply that in your mind, does that constitute proof of guilt to beyond a reasonable doubt, and to the exclusion of reasonable doubt.

- 18 -

Ex. 9 at 257-58.

Defense counsel continued with this commentary:

> **When we had the questioning Monday, I
> asked all of you, and I asked the entire
> panel, could you keep an open mind, can you
> put prejudices and assumptions aside, can you
> not come in here with the idea of he probably
> did it, so let's look at it.  But you know,
> wink, wink, it's probably him.  This man is
> innocent.  He is innocent by law, and he will
> remain innocent unless you conclude that
> everything they throw, everything that matches
> up, is enough to wipe those reasonable doubts
> out of your mind.  Keep an open mind.  Keep an
> open mind.**
>
> The defendant has no obligation to bring
> forth any evidence whatsoever of his
> innocence.

Id. at 258-59 (emphasis added).

Petitioner asserts that counsel's statement, "[b]ut you know, wink, wink, it's probably him" tainted the jury trial.  Id. at 258. Petitioner claims this statement amounted to attorney misconduct. Reviewing the statement in context, it is clear that Petitioner's counsel was asking the jury not to have any preconceived notions as to Petitioner's guilt, reminding the jurors that they had agreed to put their prejudices and assumptions aside and to view Petitioner as an innocent man, unless and until the state actually presents evidence which negates all reasonable doubt.  This argument was reinforced by counsel's repeated request to the jury to keep an open mind during the course of the proceedings and his admonishment

to remember that Petitioner is not obliged to present evidence of his innocence during the trial.

To the extent this claim was addressed by the trial court and affirmed by the state appellate court, the adjudication of this claim is entitled to AEDPA deference. With regard to Petitioner's claim of ineffective assistance of trial counsel, the state court's ruling is supported by controlling case law: <u>Strickland</u> and progeny. Deference, under AEDPA, should be given to the state court's holding. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. This Court concludes that the adjudication of this claim of ineffective assistance of counsel is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

Petitioner claims the trial court missed this particular claim of ineffectiveness and failed to address it. Assuming arguendo that is the case, Petitioner is not entitled to habeas relief because the claim has no merit. This portion of defense counsel's opening statement did not amount to attorney misconduct. Petitioner's attorney, in his opening statement, attempted to remind the jury that it should not start the trial with preconceived prejudices and assumptions, but should rather start the trial with an open mind, prepared to require the state to prove its case beyond a reasonable doubt and not begin considering the evidence and testimony with any residual presumption about the

guilt of the defendant, to wit:  "wink, wink, it's probably him."
Ex. 9 at 258.

Counsel's performance did not fall below an objective standard
of reasonableness.  In the opening statement, counsel effectively
reminded the jury of the presumption of innocence and emphasized
the state's very heavy burden of proof.  Upon review, counsel set
the foundation for attacking the weakness in the state's case
during opening statement.  Counsel continued the attack by
vigorously cross examining the state's witnesses and by putting on
a defense witness, Detective Samuel N. Beardon, who stated that
there was information obtained "regarding a possible suspect." Ex.
9 at 335.

Counsel's performance was reasonably effective.  Not only has
Petitioner failed to show deficient performance, he has failed to
show that he was prejudiced by counsel's performance.  Petitioner
is not entitled to relief on ground three of the Petition.

Petitioner also claims that he was denied a fair trial under
the Due Process Clause of the Fourteenth Amendment.  This Court
does not find persuasive Petitioner's argument that this isolated
statement made during defense counsel's opening statement deprived
Petitioner of a fair trial.  An explanation follows.

In its preliminary instructions, the trial court instructed
the jury:

> This is a criminal case.  The defendant
> is charged with burglary to a dwelling.  The
> definition of the elements of that crime will

be explained to you at a later time, afer
you've heard the evidence in the case.

It is your solemn responsibility to
determine whether or not the State has proved
it's accusations beyond a reasonable doubt
against Mr. Williams.

Your verdict must be based solely on the
evidence that you've seen in this courtroom,
or the lack of evidence, and the law as I will
instruct you.

Ex. 9 at 243.

In his opening statement, defense counsel effectively re-
emphasized the trial court's preliminary instructions to the jury.
Considering all of the above, Petitioner's trial was not rendered
unfair by defense counsel's opening statement.   Therefore,
Petitioner is not entitled to relief on ground three.

In the alternative, to the extent the due process claim was
raised in the federal constitutional sense, and to the extent that
the federal constitutional claim was addressed, the state court's
rejection of this ground is entitled to deference as required
pursuant to AEDPA.  The adjudication of the state court resulted in
a decision that involved a reasonable application of clearly
established federal law, as determined by the United States Supreme
Court.  Petitioner has not established "that the state court's
ruling on [his due process] claim . . . was so lacking in
justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement."  Harrington, 562 U.S. at 103.  The state court's

decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Petitioner's third ground is due to be denied.

### C.  Ground Four

In ground four, Petitioner raises a Sixth Amendment claim of ineffective assistance of counsel alleging counsel advised Petitioner not to testify because counsel assured him he would raise the issue of denial of access to the object (jar/bowl), which counsel did, but Petitioner now complains that counsel failed to object in order to preserve the matter for appeal, depriving Petitioner of a fair trial in violation of the Fourteenth Amendment.  Petitioner, in his fourth ground, alleges:

> 6th Amendment violation right to a fair trial and due process violation[.] Denied the right to testify by my trial counsel tell me that I didn't need to testify that he would raise the issue[.] Counsel did raise the issue but failed to object to preserve it for appeal.

> The petitioner wanted to testify in his trial held 2-5-2009 to let the jury know that he was denied access to the alleged object that his print was alleged to have been found on to have ex part[e] examination done and by being denied this right this is no way he could properly cross examine the state's witness. The petitioner's trial counsel advised the petitioner not to testify and that he would raise the issue.  He did raise the issue but failed to object to preserve the issue for appeal review.

Petition at 9.

- 23 -

Respondents assert that Petitioner failed to exhaust this ground because he only briefly mentioned this claim in a supplement to his Rule 3.850 motion.  Response at 32; Ex. 20K at 53. Respondents also contend that there is a procedural default because Petitioner failed to include this ground in his brief on appeal of the denial of the Rule 3.850 motion.  Response at 33.  The Court will assume for purposes of this opinion that Petitioner adequately exhausted his state court remedies and did not procedurally default this ground since he included the matter in a supplement to his motion and the trial court mentioned the supplements in its order denying the Rule 3.850 motion, and the state appellate court affirmed.

Upon review, the record before the Court refutes Petitioner's claim.  The court inquired of Petitioner concerning his right to remain silent and his ultimate decision on whether or not to testify. Ex. 9 at 326.  The court gave Petitioner significant time to discuss his decision with counsel.  Id. at 327.  After a second conference with his client, defense counsel announced: "I've discussed with my client, and I think we've clarified what his argument and what his testimony would be; **and I think we've resolved that he will not be testifying, that there are some items that he wants me to cover on the argument.**" Id. (emphasis added).

Of import, the relevant discussions about the right to remain silent and/or the right to testify occurred after the state

announced rest.  Id. at 320.  There was no further presentation of
evidence by the state, no further opportunity to cross examine the
state's witnesses with regard to the "alleged object[,]" and no
additional opportunity to object to the state's presentation of
evidence.  Thus, it is clear that the discussion and Petitioner's
agreement to cover the matter on argument rather than through
Petitioner's own testimony was made after the conclusion of the
state's case; therefore, the time for objections to the state's
presentation of evidence had passed when Petitioner made his
decision not to testify and agreed to the strategy of presenting
the matter in argument.

Also, after defense counsel announced his client's decision
not to testify, the court inquired of the defendant himself to
ensure that Petitioner made the decision, not his counsel.  Id. at
327-28.  Petitioner confirmed that it was his decision, stated he
was not forced to make the decision, and assured the court that he
was not going to testify.  Id.  Moreover, Petitioner "is a five
time convicted felon," which certainly constituted a significant
factor in any decision made about testifying before the jury.  Id.
at 390.  See Ex. 12 at 160.

And, as agreed, defense counsel did cover the material in
closing argument.  Petitioner concedes this fact in his Petition.
Petition at 9.

In closing, defense counsel emphasized the deficiencies in the
state's case:

- 25 -

Do we have pictures of the rolled print on the bowl or the cookie jar.  Are the bowl and the cookie jar the same thing.  The police say bowl, she remembers cookie jar.

We don't have any indication that that fingerprint was put there on that day.  If it was a burglary, and he decided to take off his gloves and paw the cookie jar, it could have gotten there that way.  It's equally conceivable that when you're walking through Wal-Mart, and you're seeing whether the cookie jar, the items are worth buying or not, you're going to handle them, and you say, you know, too much fruit, I don't think I like it, and put it back on the shelf and close the lid. Somebody else comes along, they buy it.

Seven months later, nine months later, they dust that broken cookie jar or bowl, you're the last one that touched it, you're the suspect.  Luckily, if you're the suspect, you become the defendant, you don't have to prove your innocence.  But imagine, how would you do it.  He doesn't have to prove his innocence, he doesn't have to.

Did they do one other thing to link him to this crime.  Did they link him to the stolen TV, did they link him to a burglary tool that pried open the door, did they link him to the $750.  Did they put an eyewitness – and I understand criminals try to avoid detection, and police try to catch them.  But there is no eyewitness, there is nothing except one lift.

This is not a fixed item, this is not a fingerprint on a murder weapon, left at the scene of the crime, and it belongs to the jealous ex-boyfriend.  When you put that -- you add that into the equation, that's it, one fingerprint match, on something bought from Wal-Mart.

Is it unreasonable to think that something that gets bought at Wal-Mart gets touched by somebody else in Jacksonville.  Is that really enough.  If you're comfortable

> looking at him and saying, Judge, it's your
> turn to sentence him, we think he's been
> proven guilty.
>
> I don't think the way in which someone
> would decide all of a sudden to just, you
> know, I'm going to leave a print, makes sense
> in our world.  But you know, you don't wear
> gloves when you're looking in Wal-Mart, you
> don't think that something you're going to
> leave behind is going to be interpreted as
> evidence of criminal guilt.

Ex. 9 at 358-60.

Counsel continued, reflecting that "I doubt any of you ever

thought you were going to have a case where only one bit of

information, only one bit of evidence on which to hinge guilt or

innocence, was one fingerprint left, and that's it."  Id. at 360.

Counsel argued that the police investigation was deficient:

> It was, you know, just a burglary, we'll
> just do a little bit, and they went with what
> they got.
>
> Mr. Skinner's done a great job of being
> honorable and presenting everything that the
> JSO provided him in terms of investigating
> this.  But sometimes it's just not enough.
> And he has legally the benefit of the doubt,
> expressed as a presumption of innocence.  They
> haven't overcome it, they have not overcome
> it.

Id. at 361.  He concluded by asking the jury to find that the state

simply did not give it enough to find Petitioner guilty of the

charged offense.  Id.

To the extent the federal constitutional claim was addressed,

the state court's adjudication of the claim is entitled to AEDPA

deference.  In evaluating the performance prong of the Strickland

- 27 -

ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). As such, based on the defense at trial, it was sound trial strategy to present the matter in argument and not through a five-time convicted felon's testimony. Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1238 (11th Cir.) (noting the performance inquiry of Strickland usually boils down to whether counsel's actions were the result of deficient performance or sound trial strategy), cert. denied, Harvey v. Reddish, 132 S.Ct. 577 (2011). Furthermore, Petitioner admits that he agreed to the strategy and announced to the court his decision not to testify. The timing of his decision is significant, as the state had already rested its case, and obviously, at that juncture, it was past the proper time for making objections to the state's presentation of evidence.

In light of all the circumstances, defense counsel's performance was not outside the wide range of professional competence. Furthermore, Petitioner has failed to satisfy the prejudice prong of Strickland. Upon review, there was no

- 28 -

unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim. The decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts.

In addition, to the extent the due process claim was raised in the federal constitutional sense, and to the extent that the federal constitutional claim was addressed, the state court's rejection of this ground is entitled to deference as required pursuant to AEDPA. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. The state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established law, or based on an unreasonable determination of the facts. Petitioner was not deprived of a fair trial.

In the alternative, Petitioner is not entitled to habeas relief on ground four. He made the decision not to testify. Defense counsel announced "that there are some items that he wants me to cover on the argument." Ex. 9 at 327. Petitioner concedes that counsel did cover the matter during argument. Petition at 9. Petitioner now complains that objections were not made. However, upon review, defense counsel challenged the actions of the police and the adequacy of the investigation of the crime through extensive cross examination of the state's witnesses. Ex. 9 at 280-87; 298-303; 318-20.

- 29 -

Defense counsel's cross examination of the evidence technician pointedly challenged the purported deficiencies in the state's case.  Initially, defense counsel, through his questions, revealed that the witness described himself as an evidence technician, which meant that his duties were more extensive during an investigation compared to that of a fingerprint technician.  Id. at 298.  Counsel also inquired about the limited evidence that was gathered or taken during the investigation of the crime.  Id. at 298-99.  Specifically, he made an inquiry that showed the police undertook a rather limited investigation, which focused on taking photographs of the scene and dusting for fingerprints, but omitted other investigative steps like obtaining DNA evidence, gathering fiber, or collecting other types of relevant evidence.  Id. at 298-99.  The evidence technician readily admitted that for home burglaries, police protocol was to just dust for fingerprints.  Id. at 299.  In this instance, however, the investigation included the taking of photographs because the house had been ransacked.  Id.  The technician also admitted that he did not take any photographs of the actual lifting of the fingerprint in situ.  Id. at 300.  Of importance to the defense's case, the evidence technician confirmed that other than dusting for fingerprints and pulling tape, he did not take any additional physical evidence into custody, precisely the point defense counsel was attempting to make through his cross examination.  Id.

Through additional cross examination, defense counsel challenged the evidence technician about his decision not to gather evidence and inquired:  "[a]nd is there a particular reason why you did not take the piece of broken bowl into custody?"  Id. at 302. The evidence technician responded:  "[w]e just don't do that.  It was an item that was there, I dusted it, I obtained what we thought was a lift.  There was no reason to take it, I don't take it."  Id. at 302-303.

Based on the trial court's ruling on the Rule 3.850 motion, it is abundantly clear that the trial court was not convinced that the jar/bowl was material evidence.  Ex. 21 at 65.  Indeed, the court found the material evidence was the fingerprint, not the jar/bowl. Id.  Furthermore, the trial court held that the evidence established "an unbroken chain of custody once was the fingerprint was lifted from the cookie jar until it was needed for trial."  Id. at 66.  Ultimately, the trial court concluded that Petitioner was not prejudiced "because the cookie jar would not have been beneficial to Defendant[.]"  Therefore, it is quite apparent that had counsel objected, as suggested by Petitioner, such an objection would not have been sustained by the court.

Under these circumstances, there was no deficient performance in failing to object, and Petitioner cannot satisfy the prejudice prong of Strickland.  Counsel exercised reasonable professional judgment in cross examining the witnesses about the evidence gathered or the lack thereof.  Counsel also presented the matter in

- 31 -

closing argument, a strategy agreed to by Petitioner.   Thus,
counsel's performance was within the wide range of professionally
competent assistance.    Even assuming deficient performance,
Petitioner has not shown prejudice.    Finally, considering the
record before the Court, the jury trial was not rendered unfair.
Petitioner has failed to adequately support his due process claim,
and the Court concludes that he is not entitled to habeas corpus
relief on ground four.

### D.  Ground Five

In his fifth and final ground, Petitioner presents the
following claim: a violation of speedy trial rules pursuant to the
Florida Rules of Criminal Procedure, as well as a denial of the
right to fair and speedy trial and denial of effective assistance
of counsel under the Sixth Amendment.   <u>See</u> Amended Petition (Doc.
8-1) at 12.   Petitioner states:

> This issue is presented based on a violation
> of Florida Rules of Criminal Procedures [sic]
> 3.191.   Which violated the Petitioner's 6th
> Amendment right to a fair and speedy trial!
> Plus the Petitioner's 6th Amendment Right to
> have effective assistance of counsel!

<u>Id</u>.

Respondents first contend that Petitioner merely raises a
state law claim in his fifth ground of the Amended Petition.   To
the extent that Petitioner is claiming a violation of a state
speedy trial law, his claim is due to be denied as it fails to
state a claim of constitutional dimension.   It should be noted that

the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Coleman v. Thompson, 501 U.S. 722 (1991). Therefore, this Court will not reexamine state-court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Since this ground presents a state law claim based on Florida speedy trial rules and related state law, Petitioner is not entitled to federal habeas corpus relief as there has been no breach of a federal constitutional mandate. Indeed, the federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992).

Petitioner raised and the trial court addressed Petitioner's claim of ineffective assistance of counsel for violating Petitioner's right to a speedy trial. Ex. 21 at 64. Again, the trial court recognized and applied the standard set forth in the seminal Supreme Court case with respect to a claim of ineffective assistance of counsel: Strickland v. Washington.

The trial court considered and succinctly rejected Petitioner's Sixth Amendment claim:

> Defendant's next claim is that counsel was ineffective for failing to safeguard Defendant's right to a speedy trial. A trial must commence 175 days after an arrest for a

felony and 90 days for a misdemeanor. Fla. R. Crim. P. 3.191(a). Defendant's felony arrest was on October 8, 2007. Defendant, through his counsel, moved for and the Court granted a continuance on March 27, 2008. Defendant's trial was on February 5, 2009 more than 175 days after his arrest. Although Defendant did not waive his right to a speedy trial, a defense motion for continuance made during the speedy trial time period waives the speedy trial rule. State v. Riechmann, 777 So.2d 342, 365 (Fla. 2000). Moreover, "moving for a continuance is a decision to be made by the defendant's attorney, and if appropriate, the motion should be granted, even if the defendant opposes it." Laidler v. State, 10 So.3d 1136, 1138 (Fla. 1st DCA 2009) (citing State v. Abrams, 350 So.2d 1104, 1105 (Fla. 4th DCA 1977). See also Randall v. State, 938 So.2d 542, 544 (Fla. 1st DCA 2006) (holding that defendant waived his right to a speedy trial when defendant's counsel moved for a continuance despite defendant's expressions to the contrary).

Ex. 21 at 66 (footnote omitted). The First District Court of Appeal affirmed this decision. Ex. 25.

The circuit court and the First District Court of Appeal denied the Sixth Amendment claim. The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground five because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In the alternative, to the extent Petitioner is raising a claim of constitutional dimension that he has been denied a fair and speedy trial, it has no merit. Under the speedy trial provision of Fla. R. Crim. P. 3.191(a), every defendant charged with a felony in Florida is required to be brought to trial within 175 days of arrest. A defendant's request for a continuance waives his right to a speedy trial. Randall v. State, 938 So.2d 542, 544 (Fla. 1st DCA 2006) (per curiam). "This waiver applies even in situations in which the attorney requests the continuance without consulting the defendant or against the defendant's wishes." Id. (citations omitted). As a result, there is no violation of a constitutional right to a speedy trial where defense counsel seeks a continuance against his client's wishes or over his client's objections. Charles v. McDonnough, No. 407cv260-SPM/WCS, 2010 WL 780200, at *16 (N.D. Fla. Feb. 26, 2010) (Not Reported in F.Supp.2d).

In the case at bar, it may have been against Petitioner's wishes for counsel to state that he was not prepared to go to trial and move to continue the trial.[6] Ex. 5A. The request for continuance and waiver of speedy trial still stands, whether

---

[6] On its face, the public defender's Motion for Continuance is well-founded. Although depositions were scheduled in Petitioner's case, the assistant public defender and the prosecutor were in trial on another case on that date, and they re-scheduled the depositions needed to adequately prepare for jury selection and trial. Ex. 5A.

Petitioner agreed with counsel's decision to move for a continuance or not.

Alternatively, the Court finds the Petitioner is not entitled to relief on his speedy trial claim. The governing precedents for Petitioner's speedy trial claim are <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), and <u>Doggett v. United States</u>, 505 U.S. 647 (1992). The test established by those decisions in adjudicating speedy trial claims requires a balancing of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. And when, as in this case, the delay between the arrest and the trial is more than one year, there is a presumption of prejudice sufficient to trigger application of the four-part test as a whole. <u>Doggett</u>, 505 U.S. at 652 n.1.

The period of delay between the arrest (October 8, 2007) and the trial (jury selection began on February 2, 2009), was 483 days, or well shy of the passing of one and one-half years. Although the time that elapsed between the arrest and trial was sufficient under <u>Doggett</u> to trigger a speedy trial inquiry, the length of time involved, 483 days, was not extraordinary under the circumstances: the conflict in scheduled depositions and another trial's dates; the need to properly prepare for jury selection and trial; and, the state's request for an emergency continuance due to the victim's family emergency. These were significant reasons justifying delay.

Petitioner asserted his constitutional right to a speedy trial in a _pro se_ state petition.  In accordance with Florida law, the motion was ruled a nullity, and the court dismissed the petition as unauthorized. Ex. 6D.  Tellingly, a motion for discharge was never filed by Mr. Leemis.

The delay at issue does not begin to approach the periods involved in _Barker_ (five years) or _Doggett_ (eight and one-half years).  "Actual prejudice can be shown in three ways:  (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) possibility that the accused's defense will be impaired." _United States v. Clark_, 83 F.3d 1350, 1354 (11th Cir. 1996) (per curiam) (citing _Doggett_, 505 U.S. at 654).

The most serious form of prejudice is that pertaining to a defendant's ability to put on a defense.  Apparently, in order to support his assertion of prejudice, Petitioner states that his key defense witness, Coreyon Comen, was killed in the summer of 2008.  Amended Petition (Doc. 8-1) at 13.  Of note, a number of depositions were re-scheduled for April, 2008.  Ex. 5B.  These notices do not include a witness by the name of Coreyon Comen.  On July 24, 2008, the state moved for a continuance because the victim had a family emergency and was unavailable for trial.  Ex. 5C.  The court granted the motion. _Id._  Upon review, retained counsel, Mr. Leemis, did not enter an appearance in the case until November 19, 2008, the date the public defender withdrew from the case.  Ex. 7.

- 37 -

Here, the public defender sought a continuance in order to properly prepare for jury selection and trial. Although, in hindsight, it may not have been to Petitioner's complete benefit because a potential defense witness allegedly passed away, but, significantly, numerous depositions were rescheduled and defense counsel was given the time to properly prepare for jury selection and trial. In addition, Petitioner eventually retained private counsel.

On balance, the delay of less than a half of a year over the benchmark period is not substantial prejudice. At most, there has been a minimal showing of prejudice, if any.[7] The delay in question did not violate Petitioner's Sixth Amendment right to speedy trial.

Petitioner is not entitled to federal habeas relief on the fifth ground of his Amended Petition. As such, the Amended Petition is due to be denied.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. 8) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

---

[7] There is nothing in the trial record before the Court which supports Petitioner's contention that the defense intended to rely on an alibi defense at trial. It is noted that Petitioner's assistant public defender did not give notice to depose Petitioner's alleged alibi witness in preparation for trial.

2.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.    If Petitioner appeals the denial of his Amended Petition, **the Court denies a certificate of appealability**.[8]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of June, 2015.

BRIAN J. DAVIS
United States District Judge

sa 6/24
c:
Adrian Francis Williams
Counsel of Record

---

    [8] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.